IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MATTHEW WEAVING,

          Plaintiff,

    v.

CITY OF HILLSBORO,

          Defendant.

No. CV-10-1432-HZ

OPINION AND ORDER

Jaime B. Goldberg
P.O. Box 86463
Portland, OR 97286

Karen M. O'Kasey
HOFFMAN HART & WAGNER, LLP
1000 SW Broadway, 20th Floor
Portland, OR 97205

1 - OPINION AND ORDER

HERNANDEZ, District Judge:

Plaintiff Matthew Weaving ("Plaintiff" or "Weaving") brings this action against defendant City of Hillsboro ("Defendant" or "the City") alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 and the corresponding Oregon statutes, ORS 659A.103 to ORS 659A.145.  Presently before me is Plaintiff's First Motion to Compel Discovery From Defendant ("First Motion to Compel")  (doc. #13).

## BACKGROUND

Weaving alleges that he has had Attention Deficit Hyperactivity Disorder ("ADHD") since childhood.  Compl., ¶ 7.  He also alleges that he experiences difficulty with communicating, interacting, and working with other people because of ADHD.  Id.

Weaving worked for the City at the Hillsboro Police Department (the "Police Department") from March 20, 2006 to December 11, 2009.  See City of Hillsboro's Resp. to Pl.'s First Mot. to Compel Disc. ("Resp."), p. 1; see also Compl., ¶ 29.  He was initially hired by the City as a police officer on March, 20, 2006, but was assigned as a detective in the winter of 2007, and was later promoted to sergeant in April 2007.  See Resp., p. 1.  On April 7, 2009, Weaving was placed on paid administrative leave pending an internal affairs investigation after the police department received an official complaint against Weaving by another employee.  Id.  After the internal affairs investigation was completed, Weaving's employment with the City was terminated on December 11, 2009.

Weaving's prayer for relief seeks lost wages, the loss of future earnings, and punitive damages.  He also seeks reinstatement to his former position with full back pay and benefits.

2 - OPINION AND ORDER

## PROCEDURAL HISTORY

Weaving filed this action on November 22, 2010. On December 8, 2010, the City filed its answer. This case was reassigned to me on February 17, 2011. On April 20, 2011, Weaving filed its First Motion to Compel. The City filed its Response on May 11, 2011.

## STANDARDS

The Federal Rules of Civil Procedure establish a liberal framework for obtaining discovery. Fed. R. Civ. P. 26; see also Hickman v. Taylor, 329 U.S. 495, 505 (1947). Under Fed. R. Civ. P. 26, a party may "obtain discovery of any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). For purposes of discovery, the definition of relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Consistent with the liberal, notice pleading standards, "discovery is not limited to issues raised in the pleadings, for discovery itself is designed to help define and clarify the issues." Id.

"If [d]efendants object to one of [p]laintiff's discovery requests, it is [p]laintiff's burden on his motion to compel to demonstrate why the objection is not justified." E.g., Carter v. Dawson, No. 1:07–cv–01325–OWW–SMS, 2011 WL 1806497, at *1 (E.D. Cal. 2011). "In general, [p]laintiff must inform the [c]ourt which discovery requests are the subject of his motion to compel, and, for each disputed response, inform the [c]ourt why the information sought is relevant and why [d]efendants' objections are not meritorious." E.g., Id.

3 - OPINION AND ORDER

**DISCUSSION**

**I. Request For Production No. 1**

Request for Production No. 1 seeks "[a]ny and all correspondence on the City Email system between Sgt. Deborah Case and Deputy Chief Skinner between January 28, 2009, and April 7, 2009." See First Mot. to Compel, p. Ex. A, p. 2. The City objects on the grounds that the request is not calculated to lead to the discovery of relevant, admissible evidence.

Weaving argues that between January 2009 and April 2009, the City conducted a "Chief's forum" in which personnel were requested to fill out index cards indicating improvements to be made in the Police Department. He asserts that Sergeant Deborah Case ("Case") noted she wanted to "fix the sergeant problem." Weaving contends that Case perceived Weaving to be the main cause of the "sergeant problem," and after the Chief's forum, e-mail exchanges took place between Case and Deputy Chief Skinner ("Skinner"), and therefore, all the correspondences between Weaving and Skinner between January 28, 2009, and April 7, 2009, are relevant.

I find Weaving's request for production too broad. He seeks production of "any and all" email correspondences between Case and Skinner from January 2009 to April 2009, which include emails unrelated to his claims. I find, however, that email communications between Case and Skinner from January 28, 2009, to April 7, 2009, as they relate to Weaving are relevant. Accordingly, the City is ordered to produce such emails if they exist.

**II. Request For Production No. 4**

Request For Production No. 4 seeks "[t]he complete case file including all police reports and WCCCA CAD data related to HPD Case # 08-8-01123 at 1628 Orenco Parkway East." See

4 - OPINION AND ORDER

First Mot. to Compel, Ex. A, p. 2.  The City objects on the grounds that the request is overly broad and not calculated to lead to the discovery of relevant, admissible evidence.

Weaving asserts that when the City terminated Weaving's employment, the City raised HPD Case # 08-8-01123 as an example of why Weaving was properly fired and therefore is relevant.  He further asserts that the request is not overly broad because it identifies a specific case file.

The City responds that Weaving fails to point to any portion of either the fifty-seven page LA investigation report, or the sixteen-page notice Weaving received about his potential discharge that references this investigation.  The City asserts that Weaving has not shown how this case file will lead to relevant admissible evidence.

Because HPD Case # 08-8-01123 was cited by the City as an example of why Weaving was properly fired, I find it relevant to Weaving's claim.  The City is ordered to produce the requested information.

## III. Request For Production No. 5

Request for Production No. 5 seeks "[a]ny and all electronic correspondence via City e-mail system among the Hillsboro Police Department command staff, HR staff, Akin Blitz, and Judy Clarke, relating to the Judy Clarke/Lt. Goerling E-staff briefing that occurred on or about April 6, 2009."  See First Mot. to Compel, Ex. A, p. 2.  The City objects on the ground that the request seeks information subject to attorney-client privilege.

Weaving asserts that Judy Clarke ("Clarke") is an independent consultant who is not part of the defendant's "control group," and accordingly, the communication is not subject to

5 - OPINION AND ORDER

attorney-client privilege. The City responds that the attorney-client privilege extends to Clarke even though she is a human resources consultant hired by the City.

Federal common law recognizes attorney-client privilege.[1] North Pacifica, LLC v. City of Pacifica, 274 F. Supp. 2d 1118, 1126 (N.D. Cal. 2003). The mere fact that a person is an independent consultant does not destroy the privilege.[2] See U.S. v. Graf, 610 F.3d 1148, 1158-59 (9th Cir. 2010). Here, by April 6, 2009, an official complaint had been filed against Weaving. In response, the City sought legal advice to appropriately handle the complaint, which involved, among other things, communications between counsel and Clarke. Because the communications took place for the purposes of obtaining legal advice, I find that they are protected by the attorney-client privilege. Plaintiff's Request for Production No. 5 is denied.

## IV. Request For Production No. 13

Request For Production No. 13 seeks "[a]ll documents that relate to the demotion of Jeff Martin from Sergeant to Police Officer (in approximately 2002), including contents of Jeff Martins' personnel file that relate to performance plans, counseling memoranda, reprimands, investigative files, corrective action documentation, and formal notices." See First Mot. to

---

[1] The City asserts that the attorney-client privilege here is governed by Rule 503 of the Oregon Evidence Code ("Rule 503"). However, "[i]n cases involving federal question jurisdiction with 'pendent' state law claims, Ninth Circuit courts apply federal privilege law." Ballard v. Tri-Cnty. Metro. Transp. Dist. of Or., Cv. No. 09–873–PK, 2011 WL 1337090, at *28 (D. Or. 2011) (citing Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367 n.10 (9th Cir. 1992)). When a conflict between privilege laws arises, courts favor the body of privilege law that would admit the evidence at issue. See Ballard, Cv. No. 09–873–PK, 2011 WL 1337090, at *28 (citation omitted). Here, this case involves both state law claims and claims for which this court has federal question jurisdiction, namely those arising under the ADA. Accordingly, I find that federal privilege law applies.

[2] Here, both parties agree that Clarke is an independent human resources consultant.

6 - OPINION AND ORDER

Compel, Ex. A, p. 4. The City objects on the grounds that this request is confidential personnel information and is not relevant.

Weaving asserts that "Martin . . . had similar issues that caused his demotion, as those perceived as the [P]laintiff's issues causing [P]laintiff's termination. The information sought in this request would illustrate whether Jeff Martin required a supervisor to shadow him on a full time basis." Pl.'s First Mot. to Compel Disc., p. 3-4.

Weaving's vague statement that Martin "has similar issues that caused his demotion" is insufficient to meet his burden. Weaving fails to show or argue that Martin was demoted because he had a disability pursuant to the ADA or Oregon law, had any communication problems, or had a supervisor shadow him on a full-time basis. Weaving's request is denied.

## V. Request for Production No. 14

Request for Production No. 14 seeks "[a]ll documents in the personnel file of Hillsboro Police Department Sergeant Bob Erickson that relate to interpersonal communications issues with other personnel in the Hillsboro Police Department." See First Mot. to Compel, Ex. A, p. 4. The City objects on the grounds that Sergeant Bob Erickson's ("Erickson") personnel file is confidential and not relevant.

Weaving argues that "[Erickson] has had similar issues as those perceived as the [P]laintiff's issues causing [P]laintiff's termination. The information sought in this request would illustrate whether . . . Erickson required a supervisor to shadow him on a full time basis." Pl.'s First Mot. to Compel. Disc., p. 4.

The City responds that Weaving makes no assertion that Erickson had a disability, requested an accommodation, or that the City hired a lieutenant to shadow Erickson on a full-time basis.

I agree with the City and find that Weaving fails to meet his burden. I am not persuaded that Erickson's personnel file is relevant here.

**VI. Request for Production No. 15**

Request for Production No. 15 seeks "[a]ll e-mails related to the supervisor feedback associated with Sgt. Ray Gruby's promotional process in 2006." See First Mot. to Compel, Ex. A, p. 4. Similarly, Request for Production No. 16 seeks "[a]ll e-mails related to the supervisor feedback associated with Sgt. Ray Gruby's promotional process in 2008." Id., p. 5. The City objects on the grounds that the request for Sergeant Ray Gruby's ("Gruby") personnel information is confidential and not relevant.

Weaving asserts that "similar concerns were expressed about [Gruby] as were expressed about [P]laintiff during the defendant's process of the investigation of plaintiff and his subsequent termination. The information sought in this request would illustrate whether Ray Gruby required a supervisor to shadow him on a full time basis." Pl.'s First Mot. to Compel. Disc., p. 4-5.

The City responds that unlike Gruby's situation, this case does not involve any "promotional" process and therefore, Weaving's motion to compel production of this information should be denied. I agree with Defendants.

I find Gruby's promotional process irrelevant to Weaving's termination here. Weaving does not argue that Gruby has a disability pursuant to the ADA or Oregon statutes, nor does he

8 - OPINION AND ORDER

argue that the City hired someone to shadow Gruby on a full-time basis. Weaving's request is denied.

**VII. Request for Production No. 17**

Request for Production No. 17 seeks "[a]ll documents related to the performance of Sgt. Eric Bunday since 2008, including performance plans, counseling, reprimands, feedback, mentoring, and e-mails." See First Mot. to Compel, Ex. A, p. 5. The City objects on the grounds that Sergeant Eric Bunday's ("Bunday") personnel file is confidential and not relevant.

Weaving asserts that Bunday "had similar issues regarding performance and communication as those perceived as the [P]laintiff's issues causing [P]laintiff's termination. The information sought in this request would illustrate whether Eric Bunday required a supervisor to shadow him on a full time basis." Pl.'s First Mot. to Compel. Disc., p. 5.

Here, Weaving fails to allege or show that Bunday had any disability, requested any type of accommodation, or had ever been assigned a lieutenant to shadow him on a full-time basis. I find that the information sought here is not relevant.

**VIII. Request For Production No. 18**

Request For Production No. 18 seeks "[a]ny and all documentation relating to the hostile work environment complaint filed by Officer Chris Russell against Sgt. Bob Erickson in 2008, and any subsequent investigation and processing of the complaint." See First Mot. to Compel, Ex. A, p. 5. The City objects on the grounds that Chris Russell's ("Russell") personnel file is confidential and not relevant.

Weaving asserts that Russell was one of the City's primary witnesses upon which it based its decision to terminate Weaving's employment, and that although many witnesses were

9 - OPINION AND ORDER

interviewed, Russell was one of only four people who had their interviews transcribed. Weaving argues that Erickson had similar issues regarding performance and communication as those attributed to Weaving and his termination, and therefore, is relevant. Weaving also asserts that the information sought in this request would illustrate whether Erickson required a supervisor to shadow him on a full-time basis.

Weaving's general assertions are unavailing. Weaving fails to sufficiently demonstrate why the City's objections are not justified, and I find the information sought here not relevant. Weaving's request is denied.

**IX. Request for Production No. 19**

Request for Production No. 19 seeks "[a]ny and all documentation relating to the allegations against Sgt. Deborah Case in November and December, 2010, and the subsequent assessment and investigation of those allegations by Lts. Rheiman and Kelly." See First Mot. to Compel, Ex. A, p. 5. The City objects on the grounds that the request it is not relevant.

Weaving asserts that Case was one of the City's primary witnesses in the investigation upon which the City based its decision to terminate Weaving's employment. He asserts that Case was one of only four people who had their interviews transcribed in the investigation. He further asserts that the allegations made against Case are similar communication and interaction issues as those resulting in Weaving's termination and would illustrate whether Case required a supervisor to shadow her on a full-time basis.

I am not persuaded by Weaving's arguments, especially when considering that Weaving has failed to show or argue that Case has a disability under the ADA or corresponding Oregon

statutes, or even had a supervisor shadow her because of her disability. Weaving's request is denied.

**X. Request for Production No. 20**

Request for Production No. 20 seeks "[t]he complete investigative file relating to the allegations of untruthfulness and insubordination of former Hillsboro Police Officer Chris Russell." See First Mot. to Compel, Ex. A, p. 5. The City objects on the grounds that the request for Russell's investigative file is confidential personnel information and is not relevant.

Weaving asserts that Russell was one of the City's primary witnesses upon which the City based its decision to terminate Weaving's employment, and was one of only four people who had their interviews transcribed in the investigation. Weaving argues that Russell was forced to resign due to truthfulness and integrity issues, which are the subject of the investigative file sought in this request. Thus, the sought materials are relevant and admissible for impeachment purposes.

There is nothing in the record suggesting that Weaving was discharged for untruthfulness or integrity issues. Furthermore, there is no indication that the investigative file sought here relates to Weaving. Accordingly, Weaving's request to compel this file is denied.

11 - OPINION AND ORDER

## CONCLUSION

Based on the foregoing, Weaving's motion to compel (doc. #13) is denied in part and granted in part. Request for Production No. 1 is granted with respect to email communications between Case and Skinner from January 28, 2009, to April 7, 2009, as they relate to Weaving. Request for Production No. 4 is also granted. All other requests in this motion are denied.

IT IS SO ORDERED.

Dated this 20th day of May 2011.

      /s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge